SOUTHWORTH (STRONG v.). See Case No. 13,545.

SOWERS (UNITED STATES v.). See Cases Nos. 16,362 and 16,363.

SPADER (DE CASSE v.). See Case No. 3,-720.

---

## Case No. 13,196.

### In re SPADES et al.

### In re MUIR et al.

[6 Biss. 448;[1] 13 N. B. R. 72; 8 Chi. Leg. News, 33.]

District Court, D. Indiana. Sept., 1875.

BANKRUPTCY—COMPOSITION MEETING — CALCULATING MAJORITY—SECURED CREDITORS—PARTNERSHIP.

1. Instructions given to Indiana registers as to manner of calling and conducting composition meetings.

2. The proper construction of the clause as to calculating a majority is that creditors whose debts do not exceed $50, shall be counted in determining the value, but not in determining the number.

3. Secured creditors. are those who hold a lien upon property which otherwise would go into the general fund, not those who have personal security. This latter class may prove and vote as unsecured creditors.

[Cited in The Home, Case No. 6,657.]

4. A composition should not be allowed to work inequality or injustice, as between individual and partnership creditors. If there is no objection, the creditors may direct a general composition, which is the most simple; but if any creditor objects, he has the right to a vote by the separate classes of creditors.

5. The court, before confirming the composition, should see that it works no injustice to any class of creditors, and if it does, should give redress accordingly.

[In bankruptcy. In the matter of Michael H. Spades and others and James W. Muir and others, creditors of the bankrupt.]

Bixby & Norton, for the register.

GRESHAM, District Judge. By the amendment to the 43d section of the bankrupt act, provision is made for the disposition of pending cases by means of a composition between the bankrupt and his creditors.

In certain cases when composition proceedings are pending, application is made to the court to settle questions of practice, and for the better regulation of this method of settlement, the following statement is made for the direction of registers:

Upon an application to the court by a bankrupt whose case is pending, setting forth that he proposes to compound with his creditors an order will be made and certified to the

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

proper register, directing him to call a meeting, and to give notice of not less than ten days to each known creditor of the time, place and purpose of such meeting. These notices will be sent by mail, properly addressed and postpaid, and a memorandum will be entered by the register to the effect that he has received the order of the court and given the notices required.

The record of the register should show that at the time appointed the bankrupt appeared in person, or if from some lawful cause prevented from so appearing, then by another person on his behalf, with a statement of the whole of his debts and assets, showing also the names and addresses of the several creditors.

The proposition of the debtor being submitted, must then be adopted by a majority in number and three-fourths in value of the creditors of the debtor assembled at such meeting, voting either in person or by proxy.

This alone does not authorize the submission of the composition to the court, for an additional step must then be taken, that is, the resolution must be confirmed by the signature of the debtor and of two-thirds in number and one-half in value of all the creditors of the debtor. If the vote of those assembled at the meeting does not amount to a majority in number and three-fourths in value, the matter is at an end. But should that vote be given in that number and value, of those so assembled, a further step must be taken to confirm it by securing the signature of the debtor to the resolution, and also the signatures of a larger proportion of the creditors. to-wit: two-thirds in number and one-half in value of all the creditors of the debtor. This provision of the law is designed to protect the creditors from the effect of a resolution adopted by a smaller number assembled at such a meeting. The smaller number may adopt the resolution, but the larger number must confirm it, and it is plain from the language of the act that after the adoption of the resolution a reasonable time may be given to secure such additional signatures as may be required to confirm it.

A question arises upon the further provisions of the section as to how this voting and confirming is to be counted. The language of the amendment is: "And in calculating a majority for the purposes of a composition under this section, creditors whose debts amount to a sum not exceeding fifty dollars shall be reckoned in the majority in value, but not in the majority in number."

This language, which directs what shall be counted in the majority, is not free from obscurity. The majority, however, can only be ascertained by making the count, and as the method of making it is to be first determined before the vote is settled, it seems that the reasonable interpretation of this provision is that in settling the composition, whether for or against, creditors whose debts do not exceed fifty dollars shall not count in determin-

ing the number, but shall count in determining the value.

As to secured creditors, they are not counted at all unless they satisfy the register that there is an excess due them over the value of the security. That excess being determined by the register, they are admitted to the vote as are the creditors whose demands are unsecured.

If, however, a secured creditor abandons his security, he is admitted to vote as one unsecured.

It is proper here to observe that the secured creditors to whom this exception applies are those who are secured by the pledge, in some form, of property that, apart from their lien upon it, would go into the fund for general distribution. The language is general, to be sure, and construed strictly and without reference to other provisions of the statute, might be made to embrace those creditors who have personal security. But the law makes provision elsewhere for the protection of such sureties, allowing them to prove in full when they have paid the debt, and provides for their subrogation to the right of the creditor, if he shall have proved, and they afterward pay the debt. The provision for the abandonment of the security can only apply to such security as may be surrendered to the general fund, and can have no application to that form of security which could be abandoned only for the benefit of the surety, and not for the increase of the fund. It follows, of course, that a creditor having personal security votes upon composition proceedings as an unsecured creditor.

The question of the effect of partnership relations in making a composition presents more difficulty. The law is silent as to partnerships. It proceeds apparently upon the theory that the debts and assets are all of a single class. It does not provide for a classification of debts and assets as being individual and partnership, and for a several vote and counting among the different classes of creditors. Are the creditors of A, and those of B, and those of the firm of A & B, to be all counted together in determining the required numbers and values in these several stages for settling a composition? Or, are they to be separated into classes and to vote and be counted in such classification before the question of composition can be determined?

The act provides carefully in section 36 for the marshaling of the debts and assets and the distribution of the several individual and partnership funds, according to the well-known equity rules. The creditors being so entitled, it is easily seen that very gross inequality might in some cases result by a vote for composition without requiring a classification. If the personal assets of partners are small and the personal debts large, the personal creditors could expect only a proportionate dividend, and therefore could readily vote for a composition that would be unjust

to the partnership creditors, unless a similar ratio existed between their debts and the partnership fund. If their debts were in the aggregate comparatively small and the partnership fund large, they could, by the preponderating vote of the personal creditors, be driven to accept a composition which would be greatly below the amount of their dividends were the cause to proceed to settlement by the assignee.

Congress could not have contemplated and intended any such inequality. The cases, however, to which the attention of the court has been called are cases where the meetings have been held upon general notice to all creditors, both individual and partnership, and where the vote has been made by the creditors who assembled and those who signed the confirmation of the resolution, without any classification and without any objection on that ground from any creditor. The state of the respective debts and funds may be such as to justify this course; and where they are so it simplifies the proceedings very materially. Whether this condition of practical equality of the debts and assets, both individual and partnership, exists, is shown to the creditors at the composition meeting, and it is their province to act upon it as they see proper. They may make the composition by general vote and general confirmation, if they are content with it. Or, if one of any class of the creditors perceives that the other class is about to force upon him an unjust composition, he can demand a separate vote, and so protect himself by calling to his assistance those who compose the class to which he belongs.

It would seem that by this application of the law no injustice can be done. There remains a second meeting to be called by the court, after notice to every known creditor, for the final allowance of the composition by the court, if it shall be found to be fair and to have been conducted according to law. Should it appear at this meeting that the common voting of all creditors, individual and partnership, together worked injustice, the court can then consider if any and what redress should be given.